Kathleen J. DEMPSEY, Plaintiff,

v.

GEORGE S. MAY INTERNATIONAL
CO., Defendant.

GEORGE S. MAY INTERNATIONAL
CO., Plaintiff,

v.

Kathleen J. DEMPSEY, Defendant.

Civil Action Nos. 95–11701–
NG, 96–10458–NG.

United States District Court,
D. Massachusetts.

April 1, 1996.

Alan S. Dalinka, Hyland Robert Joyce, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for plaintiff.

Mark A. Berthiaume, Goldstein & Manello, P.C., Boston, MA, Mark T. McLaughlin, Mayer, Brown & Platt, Chicago, IL, for defendant.

### MEMORANDUM AND ORDER

GERTNER, District Judge:

## I. INTRODUCTION

These related actions arise out of a dispute over a non-competition agreement between plaintiff Kathleen J. Dempsey and her former employer, George S. May International Co. ("May"). Dempsey filed the first action (95–11701) seeking a declaration that the non-competition clause of her employment agreement with May is null and void, and additionally seeking a declaration that the arbitration clause of that agreement, which would appear to apply to the instant dispute, is void for lack of consideration. She also seeks injunctive relief, preventing May from enforcing the terms of the arbitration agreement.

May originally filed the second action (96–10458) in the United States District Court for the Northern District of Illinois, seeking to enforce the aforementioned arbitration clause. A judge of that court allowed Dempsey's motion for transfer of venue to this court, and the case was then assigned to the undersigned.

On August 8, 1995, May filed a motion to dismiss or transfer venue in 95–11701. May contended that this Court should decline jurisdiction because of the pendency of the second action, which was still before the Illinois court at the time. May also contended that, in any event, venue should be transferred for the convenience of the parties, pursuant to 28 U.S.C. § 1404.

Since the filing of May's original motion, however, the District Court for the Northern District of Illinois allowed Dempsey's motion in the Illinois action to transfer that action to this Court. May then filed a supplemental motion in the original Massachusetts action, 95–11701, seeking to have this Court first declare the arbitration clause enforceable, stay Count I (seeking a declaration on the enforceability of the non-competition agreement), dismiss Counts II and III (seeking a declaration that the arbitration clause is unenforceable and an injunction against enforcement of that clause) and then to transfer the matter back to the Northern District of Illinois for enforcement of the arbitration agreement.

## II. FACTS

May is an international management consulting firm with offices in Park Ridge, Illinois. In 1991, Dempsey began her employment with May as a Staff Consultant and served in this position until March 17, 1992, when she assumed the title of Senior Executive. She served in that position until April 28, 1995, when she resigned. On May 1, 1995, Dempsey joined American Management Services, Inc. ("AMS"), which is located in Massachusetts, and which is a competitor of May.

During the entire course of Dempsey's employment with May, the terms of her employment were governed by a series of written employment agreements. Each agreement set forth the terms of Dempsey's compensation as well as a requirement on her part not to take employment with a competitor within certain geographical regions and within one year of her leaving May's employment.

The first four of these agreements, which covered the period from October, 2, 1991 through December 31, 1994, contained a venue clause requiring disputes arising out of

Dempsey's employment to be brought in Illinois courts. However, the final agreement, which was effective at the time of Dempsey's resignation, deleted that clause and replaced it with an arbitration clause binding both parties. The arbitration clause provided that "[i]f, after employment, any dispute, claim or controversy shall arise between the Employee, on the one hand, and Employer, on the other hand, as to any issue whatsoever the same shall be referred to and settled by the 'arbitration' procedure set forth" in the agreement.

On June 23, 1995, May's attorney, Robert H. Joyce, wrote to Dempsey alleging that she had violated the non-competition clause of her employment agreement. Joyce demanded that she terminate her employment with AMS and pay $100,000 in liquidated damages. Joyce also demanded arbitration to resolve the dispute and requested that Dempsey contact him within 21 days of the date of the letter to start the arbitration process.

On July 7, 1995, Joyce received a letter from Attorney Mark A. Berthiaume. Berthiaume advised that he had been retained by Dempsey and requested further details of Joyce's allegations concerning Dempsey. He further stated that "[a]s to your demand for arbitration, I will not be in a position to respond until I have had an opportunity to meet with my client and review this matter fully. I expect to be in a position to respond within thirty days."

On July 17, 1995, Joyce wrote back to Berthiaume, inclosing a copy of Dempsey's employment agreement. He further stated that "[b]ecause of time constraints, it is impossible for us to agree to a 30–day or more extension for you to respond. We shall proceed towards arbitration ... if we do not hear from you within seven days of receipt of this letter."

On July 25, 1995, Dempsey commenced the instant action. Shortly thereafter, May commenced an action in the United States District Court for the Northern District of Illi-

nois, seeking to compel arbitration of its claim.

## III. ANALYSIS

### A. Enforceability of the Arbitration Clause

■ The parties appear to agree that instant dispute is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq.[1] Under the FAA, the question of whether a particular dispute is arbitrable under a contractual arbitration clause is governed by federal law. *Moses H. Cone Hospital v. Mercury Construction Co.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Although there is a strong federal policy in favor of arbitration under the FAA, *McCarthy v. Azure*, 22 F.3d 351, 354–355 (1st Cir. 1994), the question of whether the parties have agreed to arbitrate a particular issue is a threshold question to be addressed by the Court, unless the parties have explicitly agreed to arbitrate that issue as well. *First Options of Chicago, Inc. v. Kaplan*, —— U.S. ——, ——, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995).

■ Dempsey does not dispute the scope of the arbitration agreement at issue, but rather contends that it is void for lack of consideration, i.e. that Dempsey and May never had a valid agreement to arbitrate anything at all. In determining whether a purported promise to arbitrate is enforceable, the Court applies principles of state contract law, so long as state law does not "single out arbitration agreements" so as to make them less enforceable than other contracts. *New England Energy Inc. v. Keystone Shipping Co.*, 855 F.2d 1, 4 (1st Cir. 1988); *Securities Industry Ass'n v. Connolly*, 703 F.Supp. 146, 151 (D.Mass.1988).

■ In this case, Dempsey's employment contract was made in Illinois and the parties agreed that Illinois law would govern the contract. Under Illinois law, as in other states, mutual promises are generally adequate consideration for their own enforcement. *Cox v. Grant*, 57 Ill.App.3d 922, 15

---

1. The FAA governs, with certain exceptions, the interpretation of arbitration clauses found in "any maritime transaction or a contract evidenc-

ing a transaction involving commerce." 9 U.S.C. § 2. Defendant has asserted that the FAA applies here, and plaintiff has not contested this.

Ill.Dec. 474, 476, 373 N.E.2d 820, 822 (1978). Contracts which contain mutual absolute promises to arbitrate have consistently been found to provide adequate consideration to be enforceable. *See Hull v. NCR Corp.*, 826 F.Supp. 303, 304 (E.D.Mo.1993); *Lacheney v. Profitkey Int'l, Inc.*, 818 F.Supp. 922, 925 (E.D.Va.1993). *Compare Hull v. Norcom, Inc.*, 750 F.2d 1547 (11th Cir.1985) (agreement to arbitrate lacked consideration where employer had the option of instituting judicial proceedings).

In this case, it is undisputed that both Dempsey and May signed an agreement to arbitrate "any dispute, claim or controversy [which] shall arise between the Employee, on the one hand, and Employer, on the other hand, as to any issue whatsoever." Dempsey's sole defense to the enforcement of this agreement is that the agreement lacks consideration. She relies on two Illinois cases holding a restrictive covenant in an employment agreement to be unenforceable. *See Creative Entertainment, Inc. v. Lorenz*, 265 Ill.App.3d 343, 202 Ill.Dec. 571, 638 N.E.2d 217 (1994); *Mid–Town Petroleum, Inc. v. Gowen*, 243 Ill.App.3d 63, 183 Ill.Dec. 573, 578–579, 611 N.E.2d 1221, 1226–1227 (1993).

The cases cited by Dempsey are inapposite. Both *Creative Entertainment* and *Mid–Town* refused to enforce non-competition clauses which had been imposed by employers after the employee already had been employed by the employer. In both cases, the court found, as a matter of fact, that the non-competition agreement had not been supported by consideration, and had simply been a unilateral promise by the employee.[2]

In this case, the consideration for Dempsey's agreement to arbitrate is May's agreement to do the same. The issue involved in *Creative Entertainment* and *Mid–Town*, the restriction of the employee's freedom to act without any countervailing restriction on the employer, is not present here.

Dempsey also contends that even if the arbitration agreement is enforceable, this court should not require arbitration in Illinois, as required by the agreement. Describing the requirement as a "forum selection clause," Dempsey contends that it should not be enforced because Massachusetts is a more convenient forum. The problem with this argument is that the clause at issue is not a forum selection clause, but an arbitration clause. The choice here is not between two federal courts, but whether or not to enforce the arbitration procedures described in Dempsey's employment agreement, which specify an Illinois arbitration venue.

Even if I were to consider this an issue of forum selection, I would find the selection clause in Dempsey's employment agreement enforceable. The agreement states that arbitration will take place in the city in which Dempsey was employed at the time she entered into the agreement. Any inconvenience involved in litigating this matter before a Chicago arbitrator is caused by Dempsey's decision to move to Massachusetts. Moreover, this is not a case of an unsophisticated employee who was caught unawares of a venue requirement which essentially deprives her of the ability to protect her rights. All the evidence indicates that Ms. Dempsey was a senior executive in a management consulting company. She is represented by the same counsel as her new employer, AMS. Moreover, all of her prior employment agreements, although not requiring arbitration, did require disputes to be litigated in Illinois, and Ms. Dempsey never objected to them.

**B.  *Transfer***

A federal court may only order arbitration in the district in which it sits. *See Econo–Car International, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3rd

---

2. In *Creative Entertainment*, there was no written agreement at all to which the restrictive covenant was attached. As the court noted, "[i]t was not a promise by plaintiff of a definite term of employment in exchange for a promise by [defendant]. There were no provisions for termination of the employment relationship by either party, no additional incentives or forebearances.

Clearly, the covenant was not ancillary to an employment contract. The sole purpose of the agreement was to restrain trade." *Id.* at 574, 638 N.E.2d at 220.

Likewise, in *Mid–Town*, the restrictive covenant was inserted after the employee was on the job in exchange for promotion to a sales manager position which was then eliminated.

Cir.1974); *Snyder v. Smith,* 736 F.2d 409, 418–419 (7th Cir.1984); 9 U.S.C. § 4. Since Dempsey's employment agreement provides for arbitration in Illinois, this Court would appear to be without power to order arbitration of the parties' dispute. *See Snyder,* 736 F.2d at 419; *but see Snyder,* 736 F.2d. at 420 (dissenting view that court always has power to order arbitration in its own district, notwithstanding contractual choice of forum provision). Accordingly I find that the venue of these actions should be transferred to the Northern District of Illinois for enforcement of the arbitration clause. *See Federated Rural Elec. Ins. v. Nationwide Mut. Ins.,* 874 F.Supp. 1204, 1205–1209 (D.Kan.1995); *Bosworth v. Ehrenreich,* 823 F.Supp. 1175, 1178 (D.N.J.1993).

## *ORDER*

For the foregoing reasons, defendant's motion in No. 95–11701 to dismiss Counts II and III, to stay Count I and to transfer venue to the Northern District. of Illinois is **ALLOWED,** and both cases are ordered transferred to the United States District Court for the Northern District of Illinois for enforcement of the arbitration clause.

**SO ORDERED.**