NATIONAL–ARNOLD MAGNETICS COMPANY, a California partnership; SPS Technologies, Inc., a Pennsylvania corporation, Plaintiffs—Appellees,

v.

Richard WOOD, an individual; Pamela Berg, an individual; Roberto Mondragon, an individual; Richard Lathlaen, an individual; National Magnetics Corp, a California corporation, Defendants—Appellants,

and

Does, 1 through 10 inclusive, Defendant.

No. 02–55128.

D.C. No. CV–01–00650–RJT.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 2002.

Decided Aug. 29, 2002.

Before T.G. NELSON, PAEZ and TALLMAN, Circuit Judges.

MEMORANDUM *

I

Appellants Richard Wood, Pamela Berg, Robert Mondragon, Richard Lathlaen, and National Magnetics Corporation ("National"), appeal the district court's order granting in part Appellee National–Arnold Magnetics Company's ("National–Arnold") motion for a preliminary injunction. The district court's decision on a motion for a preliminary injunction is reviewed for an abuse of discretion. *See A & M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1096 (9th Cir.2002). We affirm in part, reverse in part, and remand for clarification of the scope of the preliminary injunction order.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

## II

### A. *Scope and Application of the Release*

█ The district court did not err in finding that the merger clause in the Release was only meant to supercede previous agreements between the parties concerning the "subject matter" at issue, namely National's buyout. Further, the district court's factual finding that National–Arnold's claims arose solely after the signing of the Release was not clearly erroneous. *See R.B. Matthews, Inc. v. Transamerica Transp. Servs., Inc.,* 945 F.2d 269, 272 (9th Cir.1991). National–Arnold's claims were all at least partially based on events occurring after the Release was signed and many were based on activities associated with National's resurrection subsequent to the Release—a "state of facts" which did not exist before the Release was signed. Based on these findings, the district court did not err in finding that the Release did not bar assertion of these claims.

### B. *Issuance of a Preliminary Injunction*

#### 1. *Likelihood of Success on the Trademark Claims*

█ The district court did not err in finding that National–Arnold had established a likelihood of confusion, and thus a presumption of irreparable injury, on its trademark claims against National and Wood. *See Brookfield Communications, Inc. v. West Coast Entm't. Corp.,* 174 F.3d 1036, 1066 (9th Cir.1999). Based on evidence in the record and a comparison of the marks in question, the district court did not clearly err in finding (1) that National–Arnold had demonstrated ownership of the stylized "N" and "NA" marks, based on evidence of National–Arnold's acquisition and use of those marks since 1993, (2) that the marks were similar to each other in appearance, (3) that the services provid-

ed by the two companies were identical, (4) that both companies used Internet sites and promotional mailings for purposes of marketing, and (5) that National–Arnold had demonstrated sufficient use of the "NA" mark to support its strength. It therefore was not an abuse of discretion to grant a preliminary injunction against National and Wood as to these claims.

#### 2. *Likelihood of Success on the Breach of Contract Claims*
##### (a) *1993 Confidentiality and Noncompetition Agreements*

█ The district court did not clearly err in finding that the covenants not to compete in the 1993 Agreements with Wood, Berg, and Mondragon were invalid because they were not ancillary to a valid employment contract. *See Creative Entm't, Inc. v. Lorenz,* 265 Ill.App.3d 343, 202 Ill.Dec. 571, 638 N.E.2d 217, 219 (1994). However, the district court did err in failing to consider whether, under Illinois law, these covenants were valid as ancillary to the sale of a business. *See, e.g., Cent. Water Works Supply, Inc. v. Fisher,* 240 Ill.App.3d 952, 181 Ill.Dec. 545, 608 N.E.2d 618, 621 (Ill.App.Ct.1993).

These agreements could be construed as ancillary to the sale of a business because they were developed for the purpose of encouraging the creation of the partnership, and because National–Arnold would likely be able to establish a protectable interest, since almost "any threatened business interest is an identifiable right." *Sheehy v. Sheehy,* 299 Ill.App.3d 996, 234 Ill.Dec. 34, 702 N.E.2d 200, 207 (Ill.App.Ct. 1998). The covenants, however, would be valid only if they were reasonable as to "time, geographical area and scope of prohibitive business activities." *Cent. Water Works,* 181 Ill.Dec. 545, 608 N.E.2d at 623; *see also Decker, Berta & Co. v. Berta,* 225

Ill.App.3d 24, 167 Ill.Dec. 190, 587 N.E.2d 72, 75 (Ill.App.Ct.1992).

We therefore remand to the district court for consideration of whether the covenants not to compete in the 1993 Agreements could be construed as being ancillary to the sale of a business under Illinois law, whether the restrictions are reasonable as to "time, geographical area and scope of prohibitive business activities" given that they prohibit competition in "any way" and "anywhere in the world," and if not, whether the doctrine of severability is available under Illinois law to save those provisions.

### (b) *1999 Employee Patent and Confidentiality Agreement*

The district court erred in applying the employment contract analysis used in interpreting the 1993 Agreements under Illinois law to Lathlaen's 1999 Employee Patent and Confidentiality Agreement. Lathlaen's Agreement does not specify the choice of law governing interpretation of the Agreement, and it is likely that Lathlaen's contract would be interpreted under California law, as that agreement only involved National–Arnold, a California corporation. Further, the analysis used in interpreting the covenants not to compete in the 1993 Agreements is inapplicable to National–Arnold's claims against Lathlaen because Lathlaen's Agreement only addresses confidentiality and does not include a covenant not to compete. We therefore remand for reconsideration of National–Arnold's claim against Lathlaen.

### (c) *Noncompete Provision of the Joint Venture Agreement*

■ The district court did not err in finding that National–Arnold had established a likelihood of success against National on its claims under the noncompete provision of the Joint Venture Agreement.

Although the covenant did not comply with the territorial limitations required by Cal. Business and Professions Code § 16602 (2002), the district court properly applied the rule of severability to enforce this covenant and properly limited the scope of the covenant to San Bernardino County. *See Swenson v. File*, 3 Cal.3d 389, 90 Cal.Rptr. 580, 475 P.2d 852, 856 (Cal.1970).

### (d) *2000 Consulting Agreement with Wood*

■ The district court admitted parol evidence in order to help resolve an ambiguity as to whether the covenant not to compete in Wood's 2000 Consulting Agreement prohibited Wood from engaging in any competition against National–Arnold, or only competition involving NAMLITE products and technology. Under California law, by which the 2000 Consulting Agreement is governed, "[i]f the trial court properly admitted evidence to aid in the interpretation of the Agreement, [an appellate court] must adhere to the trial court's interpretation." *Heston v. Farmers Ins. Group*, 160 Cal.App.3d 402, 206 Cal.Rptr. 585, 589 (Cal.Ct.App.1984). Because the parol evidence in question was properly admitted as "relevant to prove a meaning to which the [ambiguous] language of the instrument is reasonably susceptible," *id.* at 590 (citation and internal quotation marks omitted), we defer to the district court's interpretation of the ambiguous language, and affirm its finding that the covenant not to compete only prohibits competition involving NAMLITE technology.

### 3. *Likelihood of Success on the Misappropriation of Trade Secrets Claim*

■ The district court did not err in finding that National–Arnold failed to establish a likelihood of success against National on its claim for misappropriation of

trade secrets under the Uniform Trade Secrets Act as adopted by California. "[A] plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist," *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir.1993), and must also show "that a defendant has been unjustly enriched by the improper appropriation, use or disclosure of [that] 'trade secret,'" *id.* at 520.

The district court did not err in finding that National–Arnold failed to establish or even describe what "specific combinations" of materials and processes, which individually could not constitute protectable trade secrets, it viewed as trade secrets. The district court also did not err in finding that National–Arnold failed to show that National was actually using these "specific combinations." It therefore did not abuse its discretion in concluding that National–Arnold had not established a reasonable likelihood of success on its trade secrets claim.

### 4. *Likelihood of Success on the Unfair Competition Claim*

In analyzing a claim under Cal. Business and Professions Code § 17200 (2002), "[t]he ultimate test for unfair competition is exactly the same as for trademark infringement: whether the public is likely to be deceived or confused by the similarity of the marks." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir.1988) (citation and internal quotation marks omitted). Where, as here, likelihood of confusion has been established for trademark infringement, likelihood of confusion has similarly been established for unfair competition. *See id.* at 1178–79. The district court did not err in finding that National–Arnold had demonstrated a likelihood of confusion on its unfair competition claims.

### 5. *Balance of Hardships and Irreparable Injury as to All Claims*

Given its likelihood of success findings against National and Wood, addressed above, the district court did not abuse its discretion in concluding that National–Arnold was entitled to injunctive relief as to several of its claims. The district court properly weighed the asserted hardships of the parties against its finding of a likelihood of success on those claims, *see Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir.1999), and did not clearly err in finding that, although National had demonstrated a greater risk of harm to it than to National–Arnold, because the company and individual defendants would suffer substantial financial losses, National–Arnold had "demonstrated a significant enough risk of irreparable harm to warrant issuance of an injunction against National and Wood" based on the likelihood of success on several of its claims.

On remand, however, the district court should consider how this balance is altered by its reconsideration of whether National–Arnold can establish a likelihood of success on its noncompetition claims against Wood, Berg, and Mondragon, and its confidentiality claim against Lathlaen. The district court should also consider whether the preliminary injunction should be altered in light of such reconsideration.

### C. *Scope of the Preliminary Injunction*

Federal Rule of Civil Procedure 65(d) requires that an injunction "shall be specific in terms [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." The purpose of Rule 65 is to ensure that "those against whom an injunction is issued [ ] receive fair and precisely drawn notice of what the injunction actually prohibits."

*Union Pac. R.R. v. Mower,* 219 F.3d 1069, 1077 (9th Cir.2000) (citation and internal quotation marks omitted).

The district court's preliminary injunction order against National did not include the territorial limitation of San Bernardino County, which the district court found to be the appropriate territory under the Joint Venture Agreement. The preliminary injunction also failed to clarify when Wood was enjoined in his official, as opposed to his personal, capacity. Because it does not include these details, the order does not provide the enjoined parties with sufficient notice of the scope of their restricted conduct. *See id.*

We therefore remand to the district court for amendment of the injunction to reflect the territorial limitation of the covenant not to compete under the Joint Venture Agreement, and to clarify the scope of the injunction as to Wood. The district court should also consider whether the injunction should be modified to restrict competition in a particular market area in addition to the relevant territorial restriction.

### III

We AFFIRM the district court's grant of a preliminary injunction. We REVERSE the district court's finding that National–Arnold failed to demonstrate a likelihood of success against Wood, Berg, and Mondragon under the covenants not to compete in the 1993 Agreements, and against Lathlaen under the 1999 Employee Patent and Confidentiality Agreement. We therefore REMAND for reconsideration of these issues and for amendment of the preliminary injunction order as described in Section II above.

Each party shall bear its own costs.

**AFFIRMED in part; REVERSED in part; and REMANDED.**