# Illinois Official Reports

## Appellate Court

---

**Prairie Rheumatology Associates, S.C. v. Francis,**
**2014 IL App (3d) 140338**

---

| | |
|---|---|
| Appellate Court Caption | PRAIRIE RHEUMATOLOGY ASSOCIATES, S.C., Plaintiff-Appellant and Cross-Appellee, v. MARIA FRANCIS, D.O., Defendant-Appellee and Cross-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0338 |
| Filed | December 11, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action seeking to enforce a restrictive covenant in an employment agreement between plaintiff, a medical practice providing rheumatology services, and defendant, a licensed physician, the trial court's grant of a preliminary injunction enforcing the covenant with respect to defendant's treatment of plaintiff's current patients was reversed and the denial of injunctive relief as to plaintiff's former patients and any future patients was affirmed, since plaintiff failed to establish that adequate consideration was provided for the restrictive covenant and plaintiff likely would not prevail on the merits, especially when, *inter alia*, defendant received little or no benefit from her agreement not to compete, plaintiff did not help defendant in obtaining her hospital credentials or pay the credential fee as promised, and expedited advancement and partnership opportunities in plaintiff's practice were illusory. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 14-CH-24; the Hon. John Anderson, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

Counsel on Appeal     Steven J. Rotunno (argued) and Noel P. Goudrea, both of Kubasiak Fylstra Thorpe & Rotunno, PC, of Chicago, for appellant.

Kristen E. Prinz (argued), Amit Bindra, and Jessica Fayerman, all of Prinz Law Firm, P.C., of Chicago, for appellee.

Panel     PRESIDING JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justices Carter and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Prairie Rheumatology Associates (PRA), brought an action for injunctive relief against its former employee, Maria Francis, D.O., seeking to enforce a restrictive covenant in the parties' employment agreement. The trial court granted preliminary injunctive relief to enforce the covenant as to PRA's current patients and denied preliminary injunctive relief as to former patients and any future clients. PRA appeals, arguing that the trial court misapplied the restrictive covenant test set forth in *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871, ¶ 17, and abused its discretion in declining to enforce the restrictive covenant as to the general public and potential future clients. Dr. Francis cross-appeals, claiming that the trial court's order to enforce the restrictive covenant should be reversed because the noncompete agreement lacked adequate consideration. We affirm in part, reverse in part and remand.

¶ 2     PRA is a medical practice that offers rheumatology services in Joliet, Illinois. Dr. Maria Sosenko is a licensed physician who has been practicing as a rheumatologist in Joliet since 1986. She is the sole shareholder and president of PRA. PRA provides rheumatology services at its principal office in Joliet and at two area hospitals, Presence Saint Joseph Medical Center (Saint Joseph) in Joliet and Silver Cross Hospital (Silver Cross) in New Lenox. The majority of PRA's patients come from referrals from physicians, including many physicians on staff at the two area hospitals.

¶ 3     Defendant, Dr. Francis, is also a licensed physician specializing in rheumatology. On January 7, 2012, she entered a "Physician Agreement" with PRA with an effective date of April 9, 2012. The agreement provided Francis with an annual salary and required PRA to assist her in gaining staff privileges at the two hospitals and pay her hospital dues. PRA also agreed to introduce Dr. Francis to PRA patients and referral sources, particularly the physicians on staff at the affiliate hospitals. The employment agreement included a 2-year, 14-mile noncompetition agreement in favor of PRA. The agreement provided:

> "Physician covenants and agrees that she will not enter into a Competitive Practice (as hereinafter defined) at any time during the period beginning on the Effective Date and ending 24 months after the date of the Physician's termination of employment, whether such termination is voluntary or involuntary, for cause or without cause. The term

- 2 -

'Competitive Practice' shall mean the full-time or part-time practice of rheumatology, directly or indirectly, alone or in any capacity, for, with or on behalf of another person, partnership, corporation, or other entity with a radius of 14 miles of Corporation's office[s] at which Physician regularly provided services *** or at any other facility at which Physician has regularly provided services on behalf of the Corporation ***."

The parties agreed that as part of Dr. Francis entering the agreement and complying with its terms, she would be considered to become a shareholder of PRA after 18 months.

¶ 4    Dr. Francis began her employment with PRA on April 16, 2012. Prior to that time, she had practiced medicine for two years in Kankakee. Once she began employment with PRA, she continued to market herself to build her reputation in the Joliet area. She attended seminars, established community events, conducted speaking engagements and met with referral doctors at both Saint Joseph and Silver Cross. During her employment with PRA, Dr. Francis treated 1,118 patients. About 136 patients followed her from her Kankakee practice to PRA and 948 were new patients. According to Dr. Sosenko, less than 8% of the new patients Francis treated while working for PRA had a prior relationship with PRA and most of those new patients were referred by physicians.

¶ 5    In July 2013, Dr. Francis gave notice that she was voluntarily terminating her employment with PRA effective November 22, 2013. Francis indicated that she would honor the noncompetition agreement in her employment contract and informed PRA that she would be providing rheumatology services to patients at Hinsdale Orthopedics, a medical group with offices located in Hinsdale and New Lenox.

¶ 6    On January 3, 2014, Dr. Francis began performing services as a rheumatologist at Hinsdale Orthopedics' New Lenox office. Hinsdale Orthopedics' New Lenox office is adjacent to Silver Cross Hospital and is nine miles from PRA's principal office. Dr. Francis was also providing services at the Hinsdale office, which is not within the restricted area.

¶ 7    PRA filed a complaint for injunctive relief to enforce the restrictive covenant prohibiting Dr. Francis from practicing within a 14-mile radius of the office and the hospitals for 2 years after termination of her employment. At the preliminary injunction hearing, both parties agreed that in January of 2014 there were two full-time rheumatologists practicing at PRA, Dr. Sosenko and Dr. Susan Muthalaly. PRA also hired a full-time nurse practitioner and had another part-time rheumatologist on staff. Two other rheumatologists not affiliated with PRA also worked in the restricted area. However, no other rheumatologists worked within a six-mile radius of PRA's principal office. Dr. Sosenko testified that patients seeking an appointment at PRA had to wait six to eight weeks to see a doctor. She further testified that the practice did not advertise but obtained clients primarily through the hospitals' referrals.

¶ 8    Dr. Sosenko described Dr. Francis as a "go-getter." She admitted that Dr. Francis actively pursued relationships with other doctors at Saint Joseph and Silver Cross and frequently conducted her own community seminars to increase her client base. Dr. Sosenko could not identify any referring physicians to whom she introduced Dr. Francis during the 19 months Dr. Francis was employed by PRA. Dr. Sosenko stated that she had no problem with Dr. Francis treating current PRA patients outside the area of the restrictive covenant.

¶ 9    The trial court entered a preliminary injunction enjoining Dr. Francis from treating PRA's current patients but allowing her to treat patients she had prior to joining PRA as well as potential future patients. In its written order, the court first determined that the restrictive covenant was ancillary to the main employment contract and was supported by adequate

consideration. It then held that the restrictive covenant was reasonable as to PRA's current patients but unreasonable as to PRA's future patients and the public in general based on the three-pronged reasonableness test discussed in *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871, ¶ 17. The court then concluded that PRA had a right in need of protection, would suffer irreparable harm, had no adequate legal remedy and had established a likelihood of success on the merits only as to its current patients and entered a limited injunction following that analysis.

¶ 10                                                    ANALYSIS

¶ 11      PRA appeals, claiming that the trial court misapplied the test in *Reliable* and abused its discretion in concluding that the enforcement of the covenant would be injurious to the general public and future patients. Dr. Francis cross-appeals, arguing that the preliminary injunction cannot stand because the restrictive covenant lacked adequate consideration. Whether injunctive relief should issue to enforce a restrictive covenant not to compete in an employment contract depends on the validity of the covenant, the determination of which is a question of law. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 63 (2006).

¶ 12      Under Illinois law, a postemployment restrictive covenant is enforceable only if it is reasonable in geographic and temporal scope and it is necessary to protect an employer's legitimate business interest. *Abel v. Fox*, 274 Ill. App. 3d 811, 813 (1995). The prevailing standard of reasonableness for an agreement not to compete applies a three-part test. A restrictive covenant is reasonable only if the covenant (1) is no greater than is required for the protection of a legitimate business interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. *Reliable*, 2011 IL 111871, ¶ 17.

¶ 13      Before analyzing the reasonableness of a restrictive covenant, however, a court must make two determinations. *Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill. App. 3d 131, 137 (1997). First, the court must find that the covenant is ancillary to either a valid transaction or a valid relationship; second, the court must determine whether there is adequate consideration to support the covenant. *Id.*

¶ 14      We find there is insufficient consideration to uphold the convenant. In Illinois, continued employment for a substantial period of time beyond the threat of discharge is sufficient consideration to support a restrictive covenant in an employment agreement. *McRand, Inc. v. Van Beelen*, 138 Ill. App. 3d 1045, 1055 (1985). The traditional rule is that courts do not inquire into the adequacy of consideration, only its existence. Illinois law excepts restrictive covenants from this rule. See *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 945-46 (7th Cir. 1994). This departure results from the recognition that a promise of continued employment may be an illusory benefit where the employment is at will. *Id.* at 946.

¶ 15      Illinois courts have generally held that two years or more of continued employment constitutes adequate consideration. See *Fifield v. Premier Dealer Services, Inc.*, 2013 IL App (1st) 120327, ¶ 19; *Diederich Insurance Agency, LLC v. Smith*, 2011 IL App (5th) 100048, ¶ 15; *Brown & Brown, Inc. v. Mudron*, 379 Ill. App. 3d 724, 728-29 (2008); *Lawrence & Allen, Inc.*, 292 Ill. App. 3d at 138. This rule is maintained even if the employee resigns on his or her own instead of being terminated. *Fifield*, 2013 IL App (1st) 120327, ¶ 19. Unless adequate consideration has been given, the restrictive covenant will not be enforced. *Millard Maintenance Service Co. v. Bernero*, 207 Ill. App. 3d 736, 744 (1990).

¶ 16    In this case, Dr. Francis tendered her resignation 15 months after the start of her employment with PRA and officially left the practice after being employed for 19 months, 5 months less than the general 2-year rule of thumb that supports adequate consideration. See *Fifield*, 2013 IL App (1st) 120327, ¶ 19.

¶ 17    Even so, PRA argues that Dr. Frances received additional consideration in the employment agreement that supports enforcement of the restrictive covenant. PRA claims that in addition to her continued employment, Francis received PRA's assistance in obtaining hospital membership and staff privileges, access to previously unknown referral sources and opportunities for expedited advancement.

¶ 18    Here, Dr. Francis received little or no additional benefit from PRA in exchange for her agreement not to compete. See *White v. Village of Homewood*, 256 Ill. App. 3d 354, 356-57 (1993) (valuable consideration for a contract exists either of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, or loss of responsibility given or undertaken by the other). The evidence at the preliminary injunction hearing indicated that PRA failed to assist Dr. Francis in obtaining her hospital credentials and neglected to introduce Dr. Francis to referral sources. PRA provided Francis with credentialing applications but did not pay the entirety of her credential fee, despite its contractual promise to do so. In addition, PRA did not implement any procedure to introduce Dr. Francis to the doctors on staff at Saint Joseph or Silver Cross. During her testimony, Dr. Sosenko could not identify any doctor she introduced Dr. Francis to while Dr. Francis was practicing at PRA. Instead, Dr. Francis conducted her own marketing and developed community programs to increase her visibility. As for expedited advancement and partnership opportunities, those were illusory benefits at best. Even though the employment agreement provided that PRA would consider Dr. Francis for partnership after 18 months, there was no guarantee she would become a partner and major shareholder.

¶ 19    Because PRA failed to provide adequate consideration, the restrictive covenant is unenforceable and PRA is unable to show a likelihood of prevailing on the merits. Since we have held that the restrictive covenant is invalid, we need not address the parties' remaining arguments regarding the reasonableness of the covenant terms.

¶ 20                                                        CONCLUSION

¶ 21    We affirm the portion of the circuit court's order denying the preliminary injunction and reverse the portion of the court's order granting the preliminary injunction. The cause is remanded for further proceedings as appropriate.

¶ 22    Affirmed in part and reversed in part; cause remanded.